```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division

SCOTT CHRISTIAN WADLEY,       )
                              )
     Plaintiff,               )
                              )
          v.                  )    1:06cv777 (JCC)
                              )
PARK AT LANDMARK, LP, et al.  )
                              )
     Defendants.              )
```

## __M E M O R A N D U M   O P I N I O N__

This matter comes before the Court on Defendants' motion for summary judgment. For the following reasons, the Court will grant Defendants' motion in full.

### I. Background

This action arises under the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et. seq.* and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, for alleged discrimination regarding the non-renewal of Plaintiff's lease at Defendants' property. Plaintiff Scott Christian Wadley ("Wadley") is a forty year old African-American male who resided at the Park Landmark building in Alexandria, Virginia from 2002 until 2006, and claims to suffer from a disability. In January 2002, Plaintiff qualified for a rental subsidy through a federal housing assistance program known as "Section 8." Defendants Park at Landmark, LP ("Landmark"), Realty Management Services, Inc. ("Realty"), and

Julie Boleyn ("Boleyn") operated rental properties in Alexandria, Virginia, including the Park at Landmark property.  Prior to May of 2005, Landmark participated in a restrictive covenant with the City of Alexandria ("Covenant"), which required Landmark to lease twenty percent of its rental units to low-income tenants, including participants in the Section 8 program.  In 2005, Landmark was released from the Covenant and no longer required to maintain a percentage of low-income tenants.  A corporate decision was made to pursue market-rate tenants and followed by a phase out Landmark's Section 8 tenants through the non-renewal of Section 8 leases and replacement with market-rate tenants.  Regional Property Manager Alice Summers, who is responsible for Landmark, relayed information regarding the phase-out of Section 8 leases to Landmark and Regional staff.  Defendant Julie Boyelyn prepared non-renewal notices to Section 8 residents, including Plaintiff.  Defendants maintain that race or disability played no part in this decision.

In January 2006, Plaintiff requested that his lease be converted to a month-to-month lease.  A new lease was subsequently drafted and signed, which stipulated that either Plaintiff or the Landmark could elect not to renew the lease so long as sixty days notice was given.  On January 26, 2006, Plaintiff was sent a sixty-day notice letter indicating Landmark's intention not to renew the lease, as permitted by the

lease agreement.  Plaintiff was given until the end of March 2006 to vacate, but moved out of the building in February.  Landmark and Realty then waived Plaintiff's March rent.  Landmark is no longer accepting applications for new Section 8 tenants, although some Section 8 tenants still remain in the building on a month-to-month basis.  Originally, eighty units at Landmark participated in Section 8, and currently thirty units remain.

Plaintiff brought this action alleging that he was discriminated against on the basis of race and disability in the non-renewal of his lease, and the subsequent leasing of his former unit to a non-disabled Caucasian.  Plaintiff further alleges that Defendants' phasing out of Section 8 is discriminatory because African-American tenants are being replaced by non African-American tenants.  Defendants have moved for summary judgment on liability under the FHSA and the Civil Rights Act.  This motion is currently before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted).  In reviewing the record on summary judgment, "the

court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III. Analysis

#### A. Fair Housing Act

The Fair Housing Act (FHA) prohibits, *inter alia*, the discrimination against any person in the terms, conditions, or privileges of rental of a dwelling because of race or handicap. 42 U.S.C. §§ 3604(b) and 3604(f). Plaintiffs may establish a *prima facie* case of discrimination under the Fair Housing Act by showing either (a) that the act or practice complained of was motivated by a discriminatory purpose, or (b) that it has a discriminatory impact. *Betsey v. Turtle Creek Associates,* 736 F.2d 983, 986 (4th Cir. 1984).

Defendants may rebut a *prima facie* showing of discriminatory intent or impact, but the burden confronting

defendants faced with a *prima facie* showing of discriminatory impact is different and more difficult than what they face when confronted with a showing of discriminatory intent.  *Betsey,* 736 F.2d at 988.  Defendants may overcome a *prima facie* showing of discriminatory intent by establishing a "legitimate non-discriminatory reason for the challenged practice."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, when confronted with a showing of discriminatory impact, defendants must prove a "business necessity" sufficiently compelling to justify the challenged practice.  *Betsey,* 736 F.2d at 988 (citing *Williams v. Colorado Springs School District # 11*, 641 F.2d 835, 842 (10 Cir.1981); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, (1971).

### 1) Discriminatory Intent

Plaintiff has presented no credible evidence demonstrating discriminatory intent in Defendants' enactment of the Section 8 non-renewal policy or termination of Plaintiff's Section 8 lease.  The only evidence offered is Plaintiff's own deposition testimony, in which he claims that he overheard David Kandahari, a concierge in the Landmark building, make comments expressing dislike for Section 8 tenants.  Plaintiff's argument that Mr. Kandahari's continued employment as a concierge demonstrates discriminatory intent lacks merit.  Even assuming this testimony is true and accurate, comments made by a concierge

do nothing to establish a discriminatory intent behind a non-renewal policy.  After examining the record as a whole, this Court concludes that no reasonable trier of fact could find discriminatory intent based on the evidence submitted in this case.  Accordingly, summary judgment is appropriate on this issue.

Furthermore, even if Plaintiff had demonstrated discriminatory intent, Defendants have more than amply stated a legitimate business purpose for terminating Plaintiff's lease.  Alice Summers testified that a corporate policy dictated one hundred percent market-rate tenancy, absent a requirement to do otherwise.  (Pltf.'s Brf., Ex. D at 26).  Ms. Summers testified that after the Covenant was removed, a corporate decision was made to phase the Landmark properties into one hundred percent market-rate tenancy within a year, in order to comport with existing corporate policy.  (Pltf.'s Brf., Ex. D at 26-27).  This decision to adhere to an existing corporate policy and pursue market-rate tenants is a legitimate, non-discriminatory business reason.  Accordingly, for the reasons stated above, summary judgment is appropriate on the issue of discriminatory intent.

### 2) Discriminatory Impact

In cases of discriminatory impact, a *prima facie* case is only established upon a showing of "a *significant* disproportionate impact on the minorities in the total group to

which it was applied." *Williams v. 5300 Columbia Pike Corp.,* 891 F.Supp. 1169, 1178 (E.D. Va. 1995) (citing *Hanson v. Veterans Admin.,* 800 F.2d 1381, 1386 (5th Cir. 1986). To accomplish this, plaintiffs must offer statistical evidence sufficient to show that the challenged practice caused residents to be treated unfairly *because of* their membership in a protected group. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994 (1988)(plurality). Statistical disparities must be sufficiently substantial that they raise an inference of causation. *Id.* at 995. Merely demonstrating a statistical imbalance, without more, does not establish a greater discriminatory adverse effect on one race compared to another. *Edwards v. Johnson County Health Dept.,* 885 F.2d 1215, 1223 (4th Cir. 1989).

Plaintiff has alleged that Defendants' non-renewal program had a disparate impact on African-Americans and disabled tenants because a large number of Section 8 tenants are African-American, and they are being evicted and replaced by Caucasian tenants.[1] Plaintiff also argues that after non-renewal, such tenants have not been given the opportunity to renew their lease at a market rate, and are thus being treated differently than Caucasian tenants.

---

[1] Plaintiff has presented no evidence of discrimination based on disability, or establishing that Plaintiff is in fact disabled. However, Plaintiff's argument regarding disparate impact on African-Americans must be addressed.

7

Plaintiff argues that this case is analogous to *Green v. Sunpointe Assoc.'s, Ltd.*, 1997 WL 1526484 (W.D. Wash. 1997), an unpublished decision in which the Western District of Washington granted summary judgment for the Plaintiff on a disparate impact claim under the FHA. Plaintiff's reliance upon the *Green* decision is misguided. The decision in *Green* was made after the examination of statistical evidence that clearly showed a disparate impact on African-Americans.[2] The current case presents a different scenario, as Plaintiff has provided no statistical evidence illustrating the demographics of those affected by Defendants' Section 8 non-renewals, or facts demonstrating that non-protected groups were not similarly affected by Landmark's decision.

Defendants move for summary judgment on the grounds that this deficiency is fatal to Plaintiff's cause of action. Plaintiff's assertion that such information has not yet been obtained because Defendants refuse to provide it lacks merit. Plaintiff has been afforded the discovery period to gather statistical evidence, but has failed to do so. Plaintiff's only attempt to gather such demographic evidence was done by letter

---

[2]The Court held "the striking difference between the percentages of the protected class at issue in the Section 8 program and the percentages of those groups in the surrounding population make clear that there is a significant disparate impact...[and] the no-Section 8 policy impacts the members of the protected classes at issue at significantly greater rates than it impacts persons who are not in those protected classes." *Green,* 1997 WL 1526484 at *6).

8

rather than formal discovery request, and requested confidential information regarding Section 8 residents. Plaintiff immediately followed this request with a motion to compel, which was denied by Magistrate Judge Buchanan on November 9, 2006. Since that time, Plaintiff has taken no additional steps to accumulate statistical demographic data. Plaintiff has only provided his own deposition testimony referencing what he perceived to be a disparate impact on African-Americans. The assertions in this testimony are hearsay, and based on Plaintiff's recollection of conversations with his neighbor, Tony Mia. Plaintiff has provided no actual sworn statements from Mr. Mia or anyone else regarding discriminatory impact on African-Americans. Plaintiff has thus made no showing that Defendants' policy to phase out Section 8 leases had a different effect on disabled or African-American tenants than other tenants. Based on the absence of evidence, this Court finds that no dispute of material fact remains regarding disparate impact to African-Americans or disabled tenants, and that no reasonable trier of fact could find otherwise.[3] Accordingly, Defendants' motion for summary judgment will be granted on the issue of discriminatory impact as well as discriminatory intent, and will grant Defendants' motion for summary judgment on Plaintiff's FHA claim.

---

[3] As mentioned *supra,* Plaintiff did not establish *prima facie* discriminatory impact. Accordingly, the Court need not address the merits of applicable defenses.

### B. Alleged Violations of the Civil Rights Act

Under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982 provide that all persons shall have the same right to make and enforce contracts, including the right to lease real and personal property, regardless of race. To establish a prima facie case under § 1981, a plaintiff must establish both (a) intent to discriminate based on race; and (b) interference with a contractual interest. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). As noted before, Plaintiff has provided no credible evidence of intent to discriminate based on race. Defendants have provided sworn testimony from Julie Boyelyn and Alice Summers which states a credible, non-discriminatory purpose for the non-renewal program. Accordingly, summary judgment is appropriate on this issue.

To establish a prima facie case under § 1982, Plaintiff must demonstrate (a) he is a member of a racial minority; (b) he was denied the opportunity to lease property; and (c) race was a factor in the decision. *Bradley v. Carydale Enterprises*, 730 F.Supp. 709, 717 (E.D. Va. 1989) (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13; *Shaw v. Cassar,* 558 F.Supp. 303, 312 (E.D. Mich. 1983)). Plaintiff in this case has demonstrated that he is a member of a racial minority, satisfying the first prong of this test, and he has raised a dispute of fact regarding the second.

Plaintiff and Defendants have offered conflicting testimony as to whether he was not afforded an opportunity to renew the lease at the market rate after his Section 8 lease was terminated. Taking inferences in the light most favorable to Plaintiff, the Court proceed with its analysis under the assumption that this element has also been satisfied. However, even if the first two elements were satisfied, Plaintiff provided no evidence indicating that race was a factor in the decision to enact a Section 8 non-renewal program or to terminate his lease. Defendants have provided sworn testimony showing that race was not a factor in this decision. Accordingly, Plaintiff's cause of action fails on the third *prima facie* element, and summary judgment is appropriate on the 1982 claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted in full. An appropriate Order will issue.

January 24, 2007 /S/
Alexandria, Virginia James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE