```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

SCOTT CHRISTIAN WADLEY,          )
                                 )
     Plaintiff,                  )
                                 )
          v.                     )    1:06cv777 (JCC)
                                 )
PARK AT LANDMARK, LP, et al.     )
                                 )
     Defendants.                 )
```

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Plaintiff's motion to alter or amend judgment. For the following reasons, the Court will deny Plaintiff's motion.

### I.   Background

This action arises under the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, for alleged discrimination regarding the non-renewal of Plaintiff's lease at Defendants' property. Plaintiff Scott Christian Wadley ("Wadley") is a forty year old African-American male who resided at the Park Landmark building in Alexandria, Virginia from 2002 until 2006. Plaintiff claims to suffer from a disability. In January 2002, Plaintiff qualified for a rental subsidy through a federal housing assistance program known as "Section 8." Defendants Park at Landmark, LP ("Landmark"), Realty Management Services, Inc.

("Realty"), and Julie Boleyn ("Boleyn") operated rental properties in Alexandria, Virginia, including the Park at Landmark property.  Prior to May of 2005, Landmark participated in a restrictive covenant with the City of Alexandria ("Covenant"), which required Landmark to lease twenty percent of its rental units to low-income tenants, including participants in the Section 8 program.  In 2005, Landmark was released from the Covenant and no longer required to maintain a percentage of low-income tenants.  A corporate decision was then made to pursue market-rate tenants, followed by a phase out Landmark's Section 8 tenants through the non-renewal of Section 8 leases and replacement with market-rate tenants.  Regional Property Manager for Landmark, Alice Summers, relayed information regarding the phase-out of Section 8 leases to Landmark and Regional staff. Defendant Julie Boyelyn prepared non-renewal notices to several Section 8 residents, including Plaintiff.  Defendants maintain that race or disability played no part in this decision.

Plaintiff was a Section 8 tenant residing at Landmark since 2002, but requested that his lease be converted to a month-to-month lease in January 2006.  The new month-to-month lease provided that either he or the landlord could elect not to renew the lease so long as sixty days notice was given.  On January 26, 2006, Plaintiff was sent a sixty day notice letter indicating Landmark's intention not to renew the lease, as permitted by the

lease agreement.  Plaintiff was given until the end of March 2006 to vacate, but moved out of the building in February.  Landmark and Realty then waived Plaintiff's March rent.  Landmark is no longer accepting applications for new Section 8 tenants, although some Section 8 tenants still remain in the building on a month-to-month basis.  Originally, eighty units at Landmark participated in Section 8; currently there are thirty units remaining.

  Plaintiff brought action alleging that he was discriminated against on the basis of race and disability when he received the non-renewal notice, because his race and disability were factors in the non-renewal of his lease.  Plaintiff further alleged that Defendants' phasing out of Section 8 is discriminatory because African-American tenants are being replaced by non African-American tenants.  On January 24, 2007, this Court issued a Memorandum Opinion and Order granting summary judgment for the Defendants and dismissing Plaintiff's claims with prejudice.  The Court's decision was based upon Plaintiff's failure to show discriminatory intent and impact.  The Court also noted that, even if discriminatory intent had been shown, a legitimate business purpose was established by Defendants.  On February 6, 2006, Plaintiff filed a motion to alter or amend judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  On March 9, 2006, Defendant filed a motion for Rule

11 sanctions against Plaintiff.  Plaintiff's motion to alter or amend judgment is currently before the Court.

## II.  Standard of Review

The Fourth Circuit has explained that "courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993).  A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to "rehash" arguments previously presented or to submit evidence which should have been previously submitted.  *Id.* at 1082; *Rouse v. Nielsen,* 851 F. Supp. 717, 734 (D.S.C. 1994); *see Durkin v. Taylor,* 444 F. Supp. 879, 889 (E.D. Va. 1977) (stating that Rule 59(e) is not intended to give "an unhappy litigant one additional chance to sway the judge").  Likewise, petitioners are barred from asserting new grounds for relief in Rule 59(e) motions as permitting such would effectively "evade the bar against... litigation of claims not presented in a prior application." *United States v. Winestock,* 340 F.3d 200, 206 (4th Cir. 2003) (quoting *Calderon v. Thompson,* 523 U.S. 538, 553 (1998)).  Rather, "[t]he purpose of a Rule 59(e) motion is to 'allow the court to reevaluate the basis for its decision.'" *Rouse,* 851 F.

Supp. at 734 (quoting *Keyes v. Nat'l R.R. Passenger Corp.,* 766 F. Supp. 277, 280 (E.D. Pa. 1991)).  Courts are not required to consider evidence that is inexcusably untimely, but may examine such evidence in order to determine whether "the additional evidence, though filed untimely, indicates that the decision under review, if upheld, would result in a miscarriage of justice."  *Bogart v. Chappell,* 396 F.3d 548, 559 (4th Cir. 2005).  The appropriateness of granting a motion to reconsider is within the sole discretion of the Court.  *Boryan v. United States,* 884 F.2d 767, 771 (4th Cir. 1989).

### III.  Analysis

Plaintiff seeks to alter or amend judgment on the ground that consideration of newly discovered evidence is necessary to prevent a miscarriage of justice.  However, after a substantive review of Plaintiff's motion and accompanying evidence, Plaintiff is clearly attempting to rehash the arguments previously considered and rejected by this Court, and to use Rule 59(e) as a vehicle for further discovery that should have occurred prior to summary judgment.  While the Court will address the alleged newly discovered evidence, there is no reason to address the legal arguments for a second time.[1]  Accordingly, the

---

[1] Plaintiff seeks to reargue his case for discriminatory intent and disparate impact once again using conclusory language unsupported by any credible evidence.  Plaintiff also mistakenly asks this Court to rely upon *Sullivan v. Hernandez,* 215 F. Supp. 2d 635 (D. Md. 2002) for guidance in reconsideration.  Not only is this case non-binding upon this Court, it involves an entirely different factual scenario.  The Plaintiffs in *Sullivan*

5

Court will review Plaintiff's motion using the newly discovered evidence standard.

Newly discovered evidence must be of facts existing at the time of trial, to which the moving party was excusably ignorant despite using due diligence to learn about them. *See, e.g., Gov't Financial Servs. One Ltd P'ship v. Peyton Place, Inc.,* 62 F.3d 767, 775 (5th Cir. 1995). The Fourth Circuit standard governing relief on the basis of newly discovered evidence is the same whether the motion is brought under Rule 59 or Rule 60. *United States Fidelity & Guaranty Co. v. Lawrenson,* 334 F.2d 464, 475 n.2 (4th Cir. 1964). Rule 60 requires that a party demonstrate:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States,* 884 F.2d 767, 771 (4th Cir. 1989) (quoting *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.

---

actually applied for a lease, were qualified to rent, but denied, and the property remained available after rejection of the Sullivans' lease, but was subsequently rented to a white family. Plaintiff in this case never applied for a non-Section 8 lease, and was thus never determined to be qualified or rejected. Plaintiff once again baldly asserts that he was qualified to rent his apartment on a non-Section 8 basis, but never so much as alleges a non-Section 8 rental application. Furthermore, the Sullivan case involved no legitimate business decision regarding a Section 8 program, but rather conflicting and illegitimate business reason were offered for rejecting the applicants' lease.

1987)).  Thus, in order to support a motion for reconsideration, "the movant is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Id.* (quoting *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir. 1985)); *see also Stiers v. Martin,* 277 F.2d 737 (4th Cir. 1960).  Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law.  *Frederick S. Wyle P.C.,* 764 F.2d at 609; *see also Taylor,* 831 F.2d at 259.

Plaintiff now submits four additional affidavits, three signed, and one unsigned as newly discovered evidence.  However, these affidavits hardly fit into the Fourth Circuit's guidelines for newly discovered evidence for several reasons.  First, Plaintiff offers no legitimate reason to this Court as to why this evidence was previously unavailable.  Plaintiff merely asserts that the affidavits "were not available to Wadley at the time of Defendants' motion for summary judgment" but gives no reason as to why this evidence was unavailable, or any steps taken in due diligence.  (Pl.'s Reply Brf., 4).  This Court sees no legitimate reason why the additional affidavits would be unavailable until after final judgment, other than Plaintiff's counsel simply failing to obtain until after dismissal of this case.  The first affiant, Tony Miah, was a witness whose unsworn

7

testimony was referenced in Plaintiff's Opposition to Summary Judgment.  Given that Mr. Miah was interviewed by Plaintiff's counsel prior to the motion for summary judgment, the Court concludes that this affidavit could have been obtained prior to summary judgment upon an exercise of due diligence.  Nor does the Court see any reason why statements could not have been obtained by Brenda Gibson, Tina Strong, and Gloria Jacobs.  Once again, Plaintiff baldly claims that each declarant was unavailable, but offers no reason for unavailability or any evidence of due diligence to obtain the testimony prior to this time.  To the contrary, Plaintiff's counsel seemingly had no trouble interviewing each witness and obtaining statements in time to file a motion to alter or amend judgment after the close of discovery and dismissal of the case.  The Court finds such delay is both unexplained and inexcusable.  Accordingly, this Court finds that the affidavits presented by Plaintiff fail to present this Court with newly discovered evidence.

Furthermore, even if the Court were to consider this evidence, it is insufficient to alter or amend the judgment on the theory that it serves to avoid a "substantial injustice." Mr. Miah's statement that a white tenant moved into Mr. Wadley's former apartment was previously considered by this Court, and found to be insufficient to show discriminatory intent or

8

impact.[2]  If the Court were to consider Ms. Gibson's statement, it once again does nothing to show discriminatory intent on the part of Defendants or disparate impact on African-American tenants.  This affidavit merely shows that one other Section 8 tenant out of eighty units received a non-renewal notice from Park at Landmark, and was African-American.  Such evidence once again fails to show "a significant disproportionate impact on the minorities in the total group to which it was applied."  *Williams v. 5300 Columbia Pike Corp.,* 891 F. Supp. 1169, 1178 (E.D. Va. 1995) (citing *Hanson v. Veterans Admin.,* 800 F.2d 1381, 1386 (5th Cir. 1986)).  Nor does it show that the challenged practice caused residents to be treated unfairly *because of* their membership in a protected group.  *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994 (1988) (plurality).  Accordingly, even were the Court to consider this evidence, it fails to establish discriminatory intent and or the necessary statistical evidence to show disparate impact on African-Americans.

     The remaining two affidavits, one signed and one unsigned, and also fail to meet the criteria for newly discovered

---

[2] In his affidavit, Mr. Miah simply states that the new tenant is "white," but does not specify his name, ethnicity, or address potential membership in another protected class other than Afican-Americans.  While the Court can reasonably infer that Mr. Miah's statement implies the new tenant is Caucasian, this evidence is neither verified nor reliable.  Plaintiff once again provides the Court with no credible evidence that a Caucasian now occupies Mr. Wadley's former residence.

evidence.[3]  Nevertheless, even if the Court were to consider these affidavits, they offer no reason for the Court to alter or amend judgment.  The statements made by Tina Strong and Gloria Jacobs offer more support for Defendants' legitimate business decision defense than they do for a discrimination claim.  Both Ms. Strong and Ms. Jacobs purport to be disabled, African-American tenants who remain at Park at Landmark as month-to-month tenants despite the phasing out of their Section 8 leases.  The portion of these two statements that does support Plaintiff's argument is clearly inadmissible.  Ms. Jacobs assertion that "another Section 8 tenant by the name of Kieona received the same notice" is inadmissible hearsay under Rule 802 of the Federal Rules of Evidence, and her unsupported claim that "eighty percent of all new residents who moved in are white" wholly lacks foundation.

      For the reasons stated above, the Court finds the purported newly discovered evidence inexcusably untimely and lacking in substance necessary to present the Court with a "manifest injustice," should it not be considered.  Plaintiff's attempts to blame such untimeliness on Defendants' alleged lack of cooperation during discovery to place the burden of proof on the Defendant are unfounded.  It is clearly not the fault of Defendant that Plaintiff took no additional steps to interview

---

[3] Plaintiff did obtain a signature from Gloria Jacobs and submitted a supplemental affidavit on March 27, 2007.  Nonetheless, the fact that this affidavit is now signed does not affect the Court's ruling.

Park at Landmark residents until after final judgment. Furthermore, even if the Court were to consider this evidence, it would not cure the original deficiencies in Plaintiff's case. The facts remain that Plaintiff offers no credible evidence of discriminatory intent, or statistical evidence of discriminatory impact.[4]  Nor do these additional affidavits dispel the legitimate business purpose of phasing out or terminating the Section 8 program following the release of covenant with the city of Alexandria.[5]  Thus, there will be no manifest injustice if the Court does not consider this untimely evidence.  Accordingly, Plaintiff's motion to alter or amend judgment will be denied.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion to alter or amend judgment will be denied.  An appropriate Order will issue.

March 30, 2007                             _____/s/_____
Alexandria, Virginia                              James C. Cacheris
                                           UNITED STATES DISTRICT COURT JUDGE

---

[4] An unsigned statement by a lay witness alleging that "eighty percent of all new residents who moved in are white" is hardly statistical evidence, nor is a showing that one other Section 8 tenant whose lease was not renewed was African-American.

[5] Plaintiff attempts to categorize Defendants' characterizations of the policy change at issue as a "phase out" versus "termination" as a discrepancy in business reasons probative of pretext.  The Court finds no merit to this argument, as the two characterizations articulate the same business purpose–to replace Section 8 tenants with market-rate tenants following release from the Covenant.

11